W. J. TOBIN, AS RECEIVER OF THE RENO NATIONAL BANK, A NATIONAL BANK ASSOCIATION, APPELLANT, *v.* EDWARD J. SEABORN, AS RECEIVER OF THE SECURITY SAVINGS & LOAN ASSOCIATION, A CORPORATION, INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA, RESPONDENT.

No. 3197

January 27, 1938.                    75 P.(2d) 353.

*N. J. Barry,* for Appellant:

*William McKnight, W. B. Ames* and *David Rosner,* for Respondent:

## OPINION

By the Court, TABER, J.:

In 1931 Edward J. Seaborn, as state bank examiner, commenced an action, No. 35851, in the Second judicial district court, Washoe County, against the Security Savings & Loan Association, was appointed and qualified as receiver of said association, and took possession of its assets. On April 7, 1932, said receiver placed "on deposit" approximately $60,000 in the Reno National Bank. As security, the bank pledged to the receiver bonds, debentures, and securities in the aggregate amount of $67,000. At the same time the bank and the receiver entered into the following written agreement:

"Whereas, E. J. Seaborn, as receiver of the Security Savings and Loan Association, has placed on deposit in The Reno National Bank approximately the sum of Sixty Thousand Dollars ($60,000.00) in open account

and subject to withdrawal by check, said deposit to be carried in two accounts, one of which shall be as follows: 'Security Savings & Loan Association, E. J. Seaborn, Receiver'; the other of said accounts to be as follows: 'E. J. Seaborn, Receiver, Trust Account'; and

"Whereas, the said E. J. Seaborn as a condition of opening said accounts and depositing moneys with the said Reno National Bank has required that the said Reno National Bank shall deposit with the said E. J. Seaborn, as receiver, bonds, securities and debentures in an amount sufficient to adequately secure the full amount of the deposit;

"Now, therefore, The Reno National Bank does hereby deposit and pledge with the said E. J. Seaborn, as receiver, the bonds, debentures and securities which are listed on Schedule A, which is attached hereto and made a part hereof.

"The condition of such pledge and deposit of said bonds, securities and debentures is that The Reno National Bank will faithfully account to the said E. J. Seaborn, as receiver, of the Security Savings and Loan Association, for all moneys deposited by him in said accounts and will pay, on legal demand, all moneys so deposited by him in said accounts and will pay, on legal demand, all moneys so deposited by him, as said receiver. It is specifically provided that as said accounts may be increased that the said Reno National Bank, upon demand, will deposit such additional securities as the said E. J. Seaborn, as receiver, may require and that as said accounts may be decreased the said E. J. Seaborn shall release a proportionate amount of the securities herein pledged, it being the intention of this instrument to pledge only such amount of bonds as may be necessary to adequately secure the foregoing deposit by E. J. Seaborn, as receiver."

A list of the pledged assets was appended to said agreement. In December 1932 the comptroller of the currency found said bank to be insolvent, and in the

same month appellant was appointed and qualified as its receiver.

On February 2, 1934, at the request of appellant, the district court, in said action No. 35851, made and entered an order granting him leave to sue Receiver Seaborn in said district court. Pursuant to the last-mentioned order, appellant, on February 5, 1934, commenced action No. 45421 in said district court against Edward J. Seaborn, as receiver of the Security Savings & Loan Association, a corporation incorporated under the laws of the State of Nevada. The complaint alleged that the aforesaid pledge of securities made on April 7, 1932, and the agreement entered into between the bank and Receiver Seaborn on the same date in connection with said pledge, were wrongful and unlawful; that Receiver Seaborn was in possession of the pledged securities; that prior to the commencement of the action, appellant demanded of Receiver Seaborn that he deliver all of said securities to appellant, which demand was refused; that at the time of the purported pledge, ever since that time and at the time of the commencement of appellant's action, the pledged securities were the property and assets of the Reno National Bank; and that appellant, at the time of the commencement of his said action, was entitled to the possession of said securities as receiver of the Reno National Bank. The prayer of the complaint is for the return to appellant of said securities, for costs of suit, "and for such other and further relief as to the Court may seem meet and proper in the premises."

In his second amended answer to the complaint in said action No. 45421, respondent denied that the pledge and agreement of April 7, 1932, were, or that either of them was, wrongful or unlawful. He admitted that ever since the pledging of the securities he had been, and that at the time of filing his second amended answer still was, in possession of them. As a further separate and affirmative defense, respondent alleged in substance that

on April 7, 1932, and for several months prior thereto, the bank was in need of funds and was borrowing money, discounting its paper and assets, and hypothecating and pledging the same for the purpose of augmenting its funds from which to meet the money demands made upon it by its depositors and borrowers; that the bank, knowing that Receiver Seaborn had in his possession and subject to his control large sums of money, which would continue to accumulate and in the ordinary course of events lie idle except for such small sums as might be needed for administration purposes, invited and solicited him as receiver to place said moneys on deposit with the bank until such time as he should find it necessary to disburse the same in the course of said Security Savings & Loan Association receivership; that respondent advised the bank that he did not need or require "the facilities of said bank or an ordinary or general deposit account therein," that he would not deposit his receivership funds in the bank without adequate security, that they must also draw interest at the rate of 2 percent of 60 percent of the average daily balance, and that such funds, if deposited with the bank, must with such interest be available to him as and when needed for distribution to the beneficiaries of said receivership; that the bank, being in urgent and pressing need of money and under the necessity of borrowing money with which to meet its deposit and loan obligations, agreed to respondent's said requirements, and thereupon entered with him into said written agreement of April 7, 1932, and in pursuance thereof "did hypothecate, pledge and deliver" to respondent the bonds and securities listed in said agreement, and at the same time promised to pay respondent, on demand, all moneys delivered by him to the bank with said agreed rate of interest, and that in the event said money and interest should not be repaid on demand the respondent might sell and dispose of said securities, and after deducting the amount of

money due him, together with interest, return the balance of the bonds and securities, if any, to the bank; that at the suggestion and solicitation of the bank it was agreed that, in order to facilitate the transaction so that the money might not be held in reserve by respondent and to make the transaction sufficiently flexible as to include money which would thereafter accumulate in respondent's hands, "the money so advanced and loaned, or to be thereafter advanced or loaned, by Edward J. Seaborn, as such receiver, to said bank," should be subject to call and payable on demand, and, although in fact a loan, should be in the form of a deposit, "subject to check"; that thereafter respondent made demand upon the bank and appellant for the repayment to him of all sums of money so advanced and loaned to said bank under and by virtue of said pledge, but that the bank and appellant had refused and still refused to pay the same or any part thereof. In that part of appellant's reply which is addressed to the foregoing allegations in respondent's said further and separate affirmative defense, appellant pleaded that he had "not sufficient knowledge or information upon which to base a belief."

Respondent, by way of a second separate affirmative defense in his second amended answer to appellant's complaint in action No. 45421, alleged in substance, inter alia, that in response to a petition filed by respondent on April 1, 1933, in said case No. 35851, praying for an "order to allow claims, to give due and legal notice to all creditors of the Security Savings & Loan Association, to give due and legal notice in a daily newspaper in Reno, Nevada, for an order allowing the time for claims to be filed," and after the giving of such notice by publishing same in a Reno daily newspaper, a hearing was had in the last week of April 1933, in said district court, for the purpose of allowing claims to all creditors having filed claims with the receiver, and findings of fact were entered therein, that distribution

be made for the benefit of all creditors having filed claims; that no claim was filed with respondent by appellant or with said district court, although appellant had had due and legal notice of the time in which to file his alleged claim; that, as a result of said district court orders entered in the last week of April 1933, appellant has been estopped from filing any claims and from filing any suits, and that appellant is estopped from now claiming said pledged securities and from filing any claim whatsoever; that appellant failed to file any claim whatever until on or about the 2d day of February 1934, which was about ten months after due and legal notice had been given to file such claim, and that by reason of his failure to file any claim before said last-mentioned date, appellant, by his own laches, is estopped from filing any claim or cause of action whatsoever against respondent; that appellant has failed to offer to return and restore the moneys belonging to respondent, approximately in the sum of $43,000, for the relief of said pledged securities.

In that part of appellant's reply which was addressed to respondent's said second and further separate affirmative defense, appellant denied that he had any notice of the time in which to file said alleged claim, and denied that he failed to file any claim whatever until on or about the 2d day of February 1934. As a further defense to the matters alleged in respondent's second and further separate affirmative defense, appellant (plaintiff in the district court) alleged in his reply as follows: "I. That at the time the agreement referred to in the complaint was entered into, the securities therein mentioned were deposited in a safety deposit box in The Reno National Bank, the key to which was given to E. J. Seaborn, and another key held by said The Reno National Bank, and that plaintiff, as Receiver of The Reno National Bank, came into the possession of said key held by said bank, and that neither the said E. J. Seaborn nor W. J. Tobin, since the appointment

of W. J. Tobin, as Receiver of said The Reno National Bank, could secure access to said safety deposit box or the contents thereof without the joint act of both said E. J. Seaborn and said W. J. Tobin; that said securities, except· such as have been converted into cash by the joint act of said E. J. Seaborn and said W. J. Tobin, are now and ever since their deposit therein, have been in said safety deposit box; that certain of said securities have been converted into cash by the said E. J. Seaborn and said W. J. Tobin, and said cash deposited in said safety deposit box. II. That as far as plaintiff is able to ascertain from an examination of the records in the case of Edward J. Seaborn, as State Bank Examiner of the State of Nevada, Plaintiff v. The Security Savings & Loan Association, a corporation incorporated under the laws of the State of Nevada, in the above entitled Court, No. 35851, said securities were never listed as the assets of said Security Savings & Loan Association, and were never in the possession of said E. J. Seaborn, as Receiver of said Security Savings & Loan Association, except as herein stated. III. Plaintiff further alleges that no order was ever made in the matter of the receivership of said Security Savings & Loan Association relative to said securities, except that an order was made by the Judge of the above entitled Court authorizing said E. J. Seaborn, as such Receiver, to sell such securities at public sale in the banking house of The Reno National Bank, at Reno, Nevada, on the 19th day of April, 1933, but that no such sale was ever made. IV. Plaintiff further alleges that on or about the 31st day of January, 1934, there was a conference held with Honorable . B. F. Curler, Judge of the above entitled Court, Mr. Rosner, Mr. McKnight and Mr. Diskin with reference to said securities so held by defendant, and thereupon said Judge B. F. Curler stated that he would give permission to W. J. Tobin, as Receiver of The Reno National Bank, to sue said E. J. Seaborn, as Receiver of Security Savings & Loan Association, in the state court

to settle the title to said securities if the same were done within the next few days; that immediately thereafter, plaintiff filed a petition with said Court asking permission to sue and that said permission was granted by said Court and this action was immediately brought. V. Plaintiff further alleges that said securities were never treated or regarded, at any time during any proceedings in the matter of the receivership of said Security Savings & Loan Association, as the property of said Receiver, but that their ownership was always regarded as a question of law to be determined in Court. VI. Plaintiff further alleges that said securities were never the property of said Security Savings & Loan Association, and that plaintiff was never at any time a creditor of said Security Savings & Loan Association, and never held any claim against said Receivership requiring presentation thereof."

In August 1935 respondent noticed two motions, one in said district court action No. 35851, the other in said district court action No. 45421, each motion being for two orders; first, an order vacating and setting aside the said order of February 2, 1934, granting leave to appellant to sue respondent, and second, an order dismissing said action No. 45421. The grounds upon which the motions were based were stated at length in the moving papers. The motions were heard together by stipulation on October 15, 1935, and upon the hearing all of the records and files in said cases No. 35851 and 45421 were offered and received in evidence, and oral testimony was given by Attorney William McKnight. The records and files in said action No. 35851 so received in evidence included "an Order Allowing Claims, Classifying and Grouping Creditors, Determining Assets Applicable to Each Group, Ordering the sale of Assets to Certain Groups, ordering Receiver to Convey Nevada Assets to a Corporation for Certain Creditors, and Ordering the Incorporation of a Company to Take over Said Assets, made, entered and filed by District Judge

B. F. Curler on May 6, 1933, after a due and regular trial held on the 26th, 27th, 28th of April, 1933." In said order the district court found as facts and made orders, in part, as follows: "I find that the total cash in the hands of the Nevada receiver is the sum of $63,739.35, and that the amount of cash actually in the hands of said receiver is the sum of $4,824.75; that there is deposited in the Reno National Bank to the credit of said receiver the sum of $43,180.07; that said bank has closed its doors and is now in the hands of a receiver appointed by the Comptroller of the Currency of the United States. I further find that as a condition for making said deposit in said bank the officers of said bank entered into a written contract with said receiver wherein and whereby they pledged with said receiver to secure said deposits and said securities were thereafter delivered to the receiver and placed in a safety deposit box in said bank, the key to which was held by said receiver, the following securities: (listing them) * * * I further find that the said contract of deposit and the securities pledged should be assigned, transferred and set over to the corporation hereafter described in trust for the use and benefit of the investment certificate holders, and if and when said deposit or any part thereof is collected that payment should then be made of the whole or part or percentage due to the investment certificate holders in Colorado and Wyoming. * * * I further find that no distribution in cash can be made as contemplated by this order until such time as the money on deposit in the Reno National Bank and the United Nevada Bank is recovered. * * * It is further ordered that a corporation be formed under the laws of the State of Nevada to be designated and called Security Realization Company for the purpose of having assigned to it the assets of the corporation distributed in the payment of claims allowed to the Nevada group. * * * It is further ordered that the money now on deposit in the Reno

National Bank and any and all securities pledged with the receiver to secure said deposit, be and the receiver is hereby ordered and directed to assign the same and the whole thereof to Security Realization Company. * * * It is further ordered that until the sums of money deposited in said banks have been recovered, no cash distribution can be made, and for the purpose of collecting said deposits and the money covered thereby, the said Security Realization Company is hereby directed to take such steps and make such demands in law and equity and file such suits as may be necessary to recover said deposits. * * *"

On September 18, 1936, the district court granted the aforesaid motions, vacating the order of February 2, 1934, in action No. 35851 granting leave to appellant to sue respondent, and dismissing action No. 45421. The court held that the order of February 2, 1934, granting leave to sue, had been improvidently made. The reasons given for this holding accord with the grounds stated in respondent's motions, and are in substance that prior to the entering of the order granting leave to sue, the same district court had on May 6, 1933, ordered respondent to assign and transfer the money then on deposit in the Reno National Bank, together with the said written contract of April 7, 1932, and the securities pledged on said last-mentioned day, to Security Realization Company, which was thereafter formed under order of said district court on May 23, 1933; that said assignment was made on August 17, 1933; that Security Realization Company, since the date of recording of said assignment, to wit, August 19, 1933, had been and still was the owner, in possession, and entitled to the possession of all of the property sought to be recovered by appellant in said action No. 45421; that respondent did not have any title, possession, or right of possession to any of said property when said action No. 45421 was commenced, or on February 2, 1934, when the order granting leave to appellant to

sue respondent for the recovery of said property was made and granted by the court, nor had respondent since the commencement of said action No. 45421 acquired any title, possession, or right of possession in or to any of said property.

The reasons assigned by the district court for dismissing said action No. 45421 were, first, that it had theretofore and on September 16, 1936, granted respondent's motion in action No. 35851 to vacate and set aside the order of February 2, 1934, granting appellant leave to sue respondent; and second, that respondent had theretofore transferred and set over to Security Realization Company all of his right, title and possession in the subject-matter of said action No. 45421, which assignment and transfer were made long prior to the order of February 2, 1934, granting leave to appellant to sue respondent.

The appeal in the instant case is from the judgment of the district court dismissing said action No. 45421, and from the order of said court denying a new trial.

Appellant bases his appeal chiefly upon the following contentions: First, that the pledge and agreement of April 7, 1932, were ultra vires and void; that the receiver of a national bank is not estopped to deny the validity of an illegal pledge by his bank; and that the receiver may assert the invalidity of the pledge without making restitution by paying the pledgee's claim in full—the parties not being in pari delicto so far as the receiver is concerned. Second, that appellant had the right to sue without leave of court, because respondent had no title to the securities of which he took possession; and that the objection of want of leave to sue is not jurisdictional and was waived by respondent's answering without raising that point. Third, the securities pledged have always remained the property of the Reno National Bank and appellant is now entitled to their possession. Fourth, appellant having come into the possession of the assets of the insolvent bank in December 1932, the state district court was without power

or authority to adjudge or order any assignment, transfer, or sale of said pledged securities.

Respondent's main contentions in support of the district court's action are: First, that appellant is out of court because he asserted no claim to the pledged assets until February 2, 1934. Second, that the question whether the transactions of April 7, 1932, were ultra vires has not been properly presented on this appeal, because whether those transactions constituted a deposit or a loan is largely a question of fact, and the bill of exceptions fails to show that it contains the evidence or the substance of the evidence relating to this point, necessary to explain the alleged error relied upon as a ground of appeal. Third, that if it be conceded that the executory agreement of April 7, 1932, was originally ultra vires, it afterwards became valid as an executed agreement by virtue of the assignment and transfer of the pledged securities to respondent. Fourth, that appellant's action in the district court was for the recovery of the pledged securities—an action which could not be maintained because defendant was not at that time, and for a long time had not been, in possession of said securities.

The respective parties stipulated that the appeal in case No. 3196 [58 Nev. 432, 75 P. (2d) 359 (district court action No. 35851)] might be heard by this court "on the same Bill of Exceptions, Transcript on Appeal and written points and authorities used and oral argument made in the appeal" in the instant case, No. 3197 (district court action No. 45421).

The bill of exceptions was not settled by the trial judge, but by stipulation of the parties. This stipulation, after stating that copies of certain specified pleadings, files, papers, and records in said district court actions 35851 and 45421 set forth in the bill of exceptions are true and correct, proceeds and concludes as follows:

"It is further stipulated that the above and foregoing contains true and correct statement of the proceedings.

taken and had on the motion to vacate and set aside the order made in case No. 35851 granting leave to sue the receiver and on the motion to dismiss action No. 45421, exclusive of the oral testimony and documentary evidence therein referred to.

"It is further stipulated that the above and foregoing is hereby settled as a bill of exceptions in the above entitled action."

The foundation of this appeal is appellant's contention that the pledge of the bank's assets to secure respondent's deposit was ultra vires and utterly void. Upon this postulate appellant further reasons that the pledged assets remained, and still remain, the property of the bank; that they were taken over by him upon his qualification as receiver in December 1932, and so, along with all the other assets of the insolvent bank, became frozen from that time until liquidation; and that consequently the state district court was thereafter wholly without power to order them assigned to the receiver of the Security Realization Company.

If it be conceded that by the great weight of authority the rule of law is that a bank, unless specially authorized by statute, has no legal authority to pledge any of its assets to secure deposits of private funds, that rule can be properly applied only where it is admitted, or the evidence shows, that the funds placed in the bank were a deposit, not a loan. In this case the respondent, in his second amended answer, not only alleges that the transaction, though designated as a deposit, was in reality a loan, but details the alleged facts and circumstances showing, as he contends, that it was a loan. It does not appear from the record before us that it contains all, or substantially all, of the evidence relating to the aforesaid issue. The stipulation purporting to settle the bill of exceptions affirmatively shows that it does not contain the oral testimony and documentary evidence referred to in the proceedings taken and had on the motions.

Our statute permits the settlement of bills of exceptions by stipulation as well as by the trial judge; but in either case it is required that there be attached to or inserted in such bill of exceptions a certificate or stipulation, as the case may be, to the effect, among other things, that the bill contains the substance of the proceedings relating to the point or points involved. Section 31, New Trials and Appeals Act, Statutes of Nevada, 1937, c. 32, p. 63. Subdivision (c) of subsection 2 in said section 31, Stats. of Nevada 1937, p. 64, provides in part, that when a statement of the case is incorporated in the bill of exceptions it must contain so much of the evidence as may be necessary to explain the particular errors or grounds upon which the party intends to rely upon the appeal. The bill of exceptions in the record before us contains no certificate or stipulation complying, in substance or at all, with either of these statutory provisions. Capurro v. Christensen,. 46 Nev. 249, 209 P. 1045; Shirk v. Palmer, 48 Nev. 449, 451, 232 P. 1083, 236 P. 678, 239 P. 1000.

We have carefully studied the record on appeal, and considered the many questions discussed in briefs and oral arguments; but as the bill of exceptions was not settled in accordance with the mandatory provisions of the statute, and because we have not before us the evidence necessary to enable us to determine whether error was committed by the district court, we shall not pass on the other questions discussed by respective counsel.

The judgment and order appealed from are affirmed.