**SECURITY REALIZATION CO. v. HENDERSON.**

No. 9610.

Circuit Court of Appeals, Ninth Circuit.

June 9, 1941.

David Rosner, of Denver, Colo., and H. R. Cooke, of Reno, Nev., for appellant.

Thos. J. Salter, of Winnemucca, Nev., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

This appeal is from a decree in equity entered in the District Court of the United States for the District of Nevada.

With regard to the facts of this case "little controversy exists", as said by appellant Security Realization Company in its brief. The history of the case is as follows:

On or about June 11, 1931, Security Savings & Loan Association, a Nevada corporation, was placed in receivership by the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, and Edward J. Seaborn, State Bank Examiner of Nevada, was appointed receiver. Beginning about October 10, 1930, the said corporation had carried on deposit an open checking account in the Reno National Bank, a national banking association (hereinafter referred to as the "Bank"), and from time to

time added deposits to the account and made withdrawals therefrom by means of checks. Seaborn transferred that account in the Bank to the account of Security Savings & Loan Association, E. J. Seaborn, receiver, on October 2, 1931, there being on deposit at the time the sum of $34,008.78. Thereafter Seaborn deposited various sums to the credit of said account and, as receiver, withdrew amounts by check at different times.

On April 7, 1932, there was a balance of $57,172.25 in the account of Security Savings & Loan Association, E. J. Seaborn, receiver, and on that date Seaborn entered into the following written agreement with the Bank:

"Whereas, E. J. Seaborn, as receiver of the Security Savings & Loan Association, has placed on deposit in The Reno National Bank approximately the sum of Sixty Thousand Dollars ($60,000.00) in open account and subject to withdrawal by check, said deposit to be carried in two accounts, one of which shall be as follows: 'Security Savings & Loan Association, E. J. Seaborn, Receiver'; the other of said accounts to be as follows: 'E. J. Seaborn, Receiver, Trust Account'; and

"Whereas, the said E. J. Seaborn as a condition of opening said accounts and depositing moneys with the said Reno National Bank has required that the said Reno National Bank shall deposit with the said E. J. Seaborn, as receiver, bonds, securities and debentures in an amount sufficient to adequately secure the full amount of the deposit;

"Now, therefore, The Reno National Bank does hereby deposit and pledge with the said E. J. Seaborn, as receiver, the bonds, debentures and securities which are listed on Schedule A, which is attached hereto and made a part hereof.

"The condition of such pledge and deposit of said bonds, securities and debentures is that The Reno National Bank will faithfully account to the said E. J. Seaborn, as receiver, of the Security Savings & Loan Association, for all moneys deposited by him in said accounts and will pay, on legal demand, all moneys so deposited by him as said receiver. It is specifically provided that as said accounts may be increased that the said Reno National Bank, upon demand, will deposit such additional securities as the said E. J. Seaborn, as receiver, may require and that as said accounts may be decreased

the said E. J. Seaborn shall release a proportionate amount of the securities herein pledged, it being the intention of this instrument to pledge only such amount of bonds as may be necessary to adequately secure the foregoing deposit by E. J. Seaborn, as receiver."

The instrument bore the signature of H. H. Kennedy, vice-president of the Bank.

On the same day that the above contract was executed the securities referred to therein, and which were of the value of $67,000, were placed in a safe deposit box of the Nevada Savings & Trust Company, which conducted the safe deposit box business in the banking room of the Reno National Bank. Seaborn had possession of the two customer's keys and the depositary retained possession of the master key. At the time the securities were deposited in the safe deposit box an oral agreement was entered into between Seaborn, the Bank, and the depositary to the effect that access to the box would be permitted only when Seaborn and an officer of the Bank were present.

After April 7, 1932, money was "deposited" to, and checks drawn upon, the "account" of Security Savings & Loan Association, E. J. Seaborn, receiver, until December 9, 1932, at which time there was a balance of some $43,000. On this latter date the Comptroller of the Currency of the United States found the Reno National Bank to be insolvent and thereupon appointed Walter J. Tobin receiver. Since that time the Bank has been, and now is, in the course of liquidation.

On or about April 10, 1933, in a notice to Tobin, Seaborn proposed to sell the securities in the safe deposit box. Upon being informed of this the Comptroller refused to permit any such sale, and none was had. And on April 17, 1933, a demand was made upon Seaborn for the return of the securities to the Bank, which demand was refused.

Pursuant to an order of the Second Judicial District Court of the State of Nevada, the corporation known as Security Realization Company, appellant herein and defendant below, was formed on May 23, 1933, for the purpose of having assigned and transferred to it the assets of Security Savings & Loan Association in payment of the claims allowed by the court to the Nevada group of creditors, and on August 17, 1933, also in pursuance of the above-mentioned order, Seaborn, as re-

ceiver, assigned to Security Realization Company all the assets of said Association, including its right, title, interest, and claim in and to the pledged securities here involved. To these proceedings in the Nevada court Tobin, receiver of the Bank, was not a party.

Because the demand for the delivery of the bonds to Tobin was not complied with, an action was commenced on September 11, 1933, in the District Court of the United States for the District of Nevada, wherein W. J. Tobin, receiver, was plaintiff and E. J. Seaborn, receiver, was defendant and in which Tobin sought the complete possession of the bonds against any claim Seaborn might have to them. On January 30, 1934, by stipulation of the parties to said suit the same was dismissed without prejudice.

Leave having been obtained, an action for complete possession of the securities herein involved was commenced on February 5, 1934, by W. J. Tobin, receiver, against E. J. Seaborn, receiver, in the state court, in which there were still being conducted proceedings relative to the liquidation of the Security Savings & Loan Association. However, on September 16, 1936, the judge of that court revoked the leave of Tobin to sue Seaborn and dismissed the action, giving as his reason that the suit had not been brought against the real party in interest, because the defendant's interest in the securities had been previously assigned to Security Realization Company. An appeal was taken by the plaintiff in said cause to the supreme court of Nevada, which court affirmed on September 20, 1938, the judgment and order appealed from. Tobin v. Seaborn, 58 Nev. 416, 75 P.2d 353; Id., 58 Nev. 432, 75 P.2d 359, on rehearing, 58 Nev. 433, 82 P.2d 746.

On October 21, 1938, W. J. Tobin,[1] as receiver of the Bank, filed in the court below the instant case, naming as defendant Security Realization Company. He contended that the pledge agreement between Seaborn, receiver, and the Reno National Bank, hereinbefore set out, was illegal and void because it created a preference in favor of one private depositor over the other general creditors, such act being ultra vires in that national banks have only such powers as are expressly given them by act of Congress; that therefore he, as receiver of the Bank, is the owner of the cash proceeds[2] into which the pledged securities had been converted.

The District Court held that the pledge of the securities "was ultra vires, illegal and void for the reason that such an act created a preference in favor of one creditor of the bank over the other creditors; that the account * * * was a deposit on open checking account in said bank, and that the said bank being a national bank could not under the law give its security or pledge its assets to cover such deposit." The court, ruling against the defenses of the statute of limitations, laches, and res judicata, decreed that appellee was the owner of the cash proceeds of the pledged securities and ordered appellant to release unto appellee the said proceeds. It was further ordered that appellant, as a general creditor, should recover from the Bank receiver its pro rata share of the dividends.

In the court below Security Realization Company contended that the sum held by the Bank was not a deposit but a loan, and that, as a result, the pledge of securities was not ultra vires and void. And in its "Statement of Points To Be Relied Upon on Appeal" it attacked as error the District Court's finding that it was but a general depositor. This point, however, appellant does not urge in its brief. Let it suffice, therefore, to say that the transaction had by Seaborn with the Bank, as revealed by the contract and by the subsequent conduct of the parties, comports with the generally accepted definition of a deposit as distinguished from a loan. Schumacher v. Eastern Bank & Trust Co., 4 Cir., 52 F.2d 925, 927; Estate of Law, 144 Pa. 499, 22 A. 831, 14 L.R.A. 103, 106. "A national bank has no authority, express or implied, to secure a private depositor" (7 Am.Jur. 137, § 178), and "a contract whereby a national bank undertakes to make such pledge is not merely voidable but absolutely void and of no legal effect." 9 C.J.S. Banks and

---

[1] On February 15, 1939, just prior to the commencement of trial in the court below, W. J. Tobin resigned as receiver of the Reno National Bank, and Carroll Henderson, appellee herein, was then appointed to succeed him.

[2] Per agreement of Mr. Seaborn and Mr. Tobin, the bonds, and coupons attached thereto, were converted into cash as they matured, and the proceeds, aggregating $79,011.79, were placed in the safe deposit box.

Banking, § 690, pp. 1246, 1247. See Texas & P. R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and Buckley v. Southwestern Nat. Bank, 3 Cir., 88 F.2d 263, the rulings in which cases are doubtless conclusive against the validity of the pledge here in question. Cf. Inland Waterways Corp v. Young, 309 U.S. 517, 60 S.Ct. 646, 84 L.Ed. 901, and Yonkers v. Downey, 309 U.S. 590, 60 S.Ct. 796, 84 L.Ed. 964.

■ It might be well to mention here that the fact that the Bank's pledging of assets for the deposits made by Seaborn was ultra vires, illegal, and void does not entitle the depositor to have money of the Bank, to the extent of its deposits, held in trust. Texas & P. R. Co. v. Pottorff, supra. And "Being void the transaction could not be confirmed, ratified, enforced or rendered enforceable by the application of any doctrine of estoppel or otherwise." Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83, 85. (See 26 Va.L.Rev. 197 for a comprehensive review of the cases treating of this question.)

■ Appellant contends that the relief sought should be denied because the receiver of the Bank was guilty of laches in that he completely failed to file a claim in the court in charge of the receivership of Security Savings & Loan Association, after due notice was given, by publication or by personal notice, to all creditors, and because the receivership has been closed, the estate has been determined, and to the appellant has been assigned receiver Seaborn's interest and claim in and to the contents of the safe deposit box. As support for this defense, appellant cites and discusses at great length a number of cases and quotes a passage found in 53 C.J. § 394, p. 237, which reads in part as follows:

"* * * where * * * a notice of a limitation of the time to file claims * * * is duly published, claims not filed within the time specified in the notice are precluded * * * only where there has been, in the meantime, a final distribution of the *funds in the hands of the receiver.* * * Knowledge of the *exclusive possession and control* of property by a court through its receiver, places a claimant of ordinary prudence upon inquiry as to all measures requisite for him to pursue in order to share in the distribution," etc. (Emphasis supplied.)

The argument and cases cited by appellant are not in point for the reason that they are based upon the hypothesis that appellee's role in this case is that of a creditor of the defunct corporation or that of a claimant to property which was in the exclusive possession and control of the receivership court through its receiver. Appellee does not claim as a creditor, and there is no reason why he should be classed as one; the only debtor-creditor relationship found here is that created between the Bank as debtor and receiver Seaborn as creditor when the latter deposited the receivership monies in the Bank. Appellee's position is that, in his representative capacity as receiver of the Bank, he is entitled to have and to hold the safe deposit as an asset of said Bank, free from any exercise of ownership or control by appellant. Such claim cannot be frustrated on the ground that he failed to file a claim in the receivership proceedings above referred to, for the reason that receiver Seaborn did not have the required "exclusive possession and control" over the securities at any time. That this is so becomes apparent upon recalling that the depositary had agreed to hold the securities and proceeds subject to the *joint* authority of the Bank and Seaborn.

■ As a further defense, appellant urges that the time of appellee's right of recovery[3] "arose on or about the 7th day of April, 1933, when the contract [of pledge] was entered into", but that the right is now barred by certain provisions of the Nevada statute of limitations which apply to an action to recover specific personal property. Appellant avoids altogether any mention of just what interest Seaborn, under whom it claims, may have acquired in the contents of the safe deposit box by reason of the agreement of the depositary to hold the Bank's securities subject to the joint control of both Tobin and Seaborn; and appellant does not make known the extent of its own claims to the safe deposit nor explain in what manner the statute has operated to bar this suit. It is evident that through the contract of pledge itself Seaborn acquired no property whatever in the securities. But, apparently, appellant feels that because Seaborn, by reason of the oral agreement between him and appellee's predecessor, Tobin, on the one hand and the depositary on the other,

---

[3] Appellant admits in its brief that it "can see that appellee had a legal right to recover the personal property involved in this case".

acquired some control over the contents of the safe deposit box, his refusal to relinquish his control upon demand constituted a conversion, even though he shared his control jointly with the Bank receiver, and that the passage of time has operated (in some inexplicable manner) to confer upon appellant, as Seaborn's assignee, a title paramount to that of appellee. Such a position is untenable. In order to support a transfer of title from the original owner to another due to a lapse of time the possession of that other must be, during the period prescribed by the statute, to the exclusion of the original owner. Lightfoot v. Davis, 198 N.Y. 261, 91 N.E. 582, 29 L.R.A.,N.S., 119, 123, 139 Am.St.Rep. 817, 19 Ann.Cas. 747. But in this instance the appellant and appellee have joint possession, for the possession of the depositary is that of both of them as joint bailees (6 Am. Jur. § 89, p. 212), and no complex reasoning is required to show that in such situation the possession of the appellant could not possibly at any time have been adverse to that of appellee and that in no way could appellant be said to have converted the safe deposit to its own use.

Moreover, as said by Judge Cooley in his work on Constitutional Limitations, 8th ed., Vol. 2 at pp. 762-763, "All limitation laws, however, must proceed on the theory that the party, by lapse of time and omissions on his part, has forfeited his right to assert his title in the law. * * * but one who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another, for failure to bring suit against that other within a time specified to test the validity of a claim which the latter asserts, but takes no steps to enforce." The fact that appellant has shared in exercising the control over the securities and proceeds thereof during the years that they have been in the safe deposit box was not sufficient to have set in motion the statute of limitations against appellee. To be entitled to set up the statute to defeat recovery of specific property, personal or real, by the *real* owner one must himself, or someone holding under him, have possession to the exclusion of the *real* owner or anyone authorized to hold for him. In order to have acquired a good title—a title superior to that of the *real* owner, whose neglect to avail himself of his legal rights has lost him his title—the party in whose favor the statute is invoked must be in the "peaceable, undisturbed, open possession of real or personal property, with an assertion of * * * ownership, for the period which, under the law, would bar an action for its recovery by the real owner." Campbell v. Holt, 115 U.S. 620, 623, 6 S.Ct. 209, 210, 211, 29 L.Ed. 483, 485. From the factual situation before us it is evident that appellant has not had the requisite type of possession. Furthermore, because appellant has not made known the nature of its claim, it cannot be said to have asserted ownership over the safe deposit nor any part thereof. It seems to us pertinent to mention that at the hearing Seaborn testified, "I don't believe I ever claimed the outright ownership of the securities as receiver. I claimed that I was holding the securities as a guarantee, as a security, against the money that The Reno National Bank owed me." Because appellant is successor in interest to Seaborn and because it has made no other greater or different claims to the said securities, it must then be "holding" them in the same manner and capacity as claimed by Seaborn. " * * * it has been uniformly held that mere possession * * * continued however long, will not divest the owner of his property unless the possession is under a claim of title. Otherwise the possession will be presumed to be in subordination to the true legal title. [Cases cited.]" Lightfoot v. Davis, supra, 198 N.Y. 261, 91 N.E. 582, 583, 29 L. R. A.,N.S., 119, 123, 139 Am.St.Rep. 817, 19 Ann.Cas. 747. Obviously, because of the abortiveness of the pledge the claim of a right to have the contents of the safe deposit box remain there as a security for the deposit must fail.

In his amended complaint plaintiff (appellee herein) prays "that it be decreed that said Security Realization Company has no right, title, interest or claim of any kind or character whatsoever, of, in or to said monies into which said securities have been converted, and the whole thereof." As between appellant and appellee, the former has no property whatever in the contents of the box, either by reason of the pledge contract or by reason of the lapse of time. But as between appellee and the depositary,[4] the former has

---

[4] The depositary, in compliance with an order of the District Court, is now holding the contents of the deposit box pending the final determination of this case.

retained the general property in the deposit and the latter took a special property therein; "it is an established rule that the right of general property in chattels draws after it the right of possession." 6 Am. Jur. § 89, p. 212. Appellant, upon demand to do so, still refuses to relinquish the power of exercising jointly with appellee the control over the safe deposit, which power, having been conferred upon appellant by appellee for the purpose of effectuating the terms of the void and illegal contract of pledge, must be held to be one not founded upon consideration nor coupled with an interest and therefore revocable at will. 49 C.J. § 20, pp. 1255-1256. Appellant's continuation to retain such control in defiance of appellee and its insistence upon the right to do so have constituted an interference with the legitimate use and enjoyment of appellee's property. Appellee is therefore entitled to have the unrestricted possession of, and control over, the contents of the safe deposit box.

The order of dismissal in the state trial court was not a judgment rendered upon the merits; the case was dismissed as having been brought against the wrong party in interest. The decision of the supreme court of Nevada (reported in Tobin v. Seaborn, 58 Nev. 416, 75 P.2d 353; Id., 58 Nev. 432, 75 P.2d 359, and on rehearing, 58 Nev. 433, 82 P.2d 746) affirming the order of the trial court was also not upon the merits. Consequently the defense of res judicata interposed by appellant is unavailing. Hughes v. United States, 4 Wall. 232, 237, 71 U.S. 232, 18 L.Ed. 303.

The order of the District Court is hereby affirmed.